**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF NEW YORK**

| | |
|---|---|
| ALEX CICCOTELLI, | ) |
| | ) |
| Plaintiff, | ) |
| | ) Case No. _____ |
| v. | ) |
| | ) JURY TRIAL DEMANDED |
| PING IDENTITY HOLDING CORP., ROD ALIABADI, ANIL ARORA, DAVID BREACH, ANDRE DURAND, MICHAEL FOSNAUGH, DIANE GHERSON, PAUL E. MARTIN, JOHN MCCORMACK, YANCEY L. SPRUILL, MARTIN TAYLOR, and VIKRA VERMA, | ) |
| Defendants. | ) |

**COMPLAINT FOR VIOLATION OF THE SECURITIES EXCHANGE ACT OF 1934**

Plaintiff, by his undersigned attorneys, for this complaint against defendants, alleges upon personal knowledge with respect to himself, and upon information and belief based upon, *inter alia*, the investigation of counsel as to all other allegations herein, as follows:

**NATURE OF THE ACTION**

1. This action stems from a proposed transaction announced on August 3, 2022 (the "Proposed Transaction"), pursuant to which Ping Identity Holding Corp. ("Ping Identity" or the "Company") will be acquired by Project Polaris Holdings, LP ("Parent") and Project Polaris Merger Sub, Inc. ("Merger Sub").

2. On August 2, 2022, Ping Identity's Board of Directors (the "Board" or "Individual Defendants") caused the Company to enter into a merger agreement (the "Merger Agreement") with Parent and Merger Sub. Pursuant to the terms of the Merger Agreement, Ping Identity shareholders will receive $28.50 in cash for each Ping Identity share they own.

3. On September 16, 2022, defendants filed a proxy statement (the "Proxy Statement") with the United States Securities and Exchange Commission (the "SEC") in connection with the Proposed Transaction.

4. The Proxy Statement omits material information with respect to the Proposed Transaction, which renders the Proxy Statement false and misleading. Accordingly, plaintiff alleges herein that defendants violated Sections 14(a) and 20(a) of the Securities Exchange Act of 1934 (the "1934 Act") in connection with the Proxy Statement.

## JURISDICTION AND VENUE

5. This Court has jurisdiction over the claims asserted herein pursuant to Section 27 of the 1934 Act because the claims asserted herein arise under Sections 14(a) and 20(a) of the 1934 Act and Rule 14a-9.

6. This Court has jurisdiction over defendants because each defendant is either a corporation that conducts business in and maintains operations within this District or is an individual with sufficient minimum contacts with this District so as to make the exercise of jurisdiction by this Court permissible under traditional notions of fair play and substantial justice.

7. Venue is proper under 28 U.S.C. § 1391(b) because a portion of the transactions and wrongs complained of herein occurred in this District.

## PARTIES

8. Plaintiff is, and has been continuously throughout all times relevant hereto, the owner of Ping Identity common stock.

9. Defendant Ping Identity is a Delaware corporation and a party to the Merger Agreement. Ping Identity's common stock is traded on the NYSE, which is headquartered in New York, New York, under the ticker symbol "PING."

10. Defendant Rod Aliabadi is a director of the Company.

11. Defendant Anil Arora is a director of the Company.

12. Defendant David Breach is a director of the Company.

13. Defendant Andre Durand is a director and Chief Executive Officer of the Company.

14. Defendant Michael Fosnaugh is a director and Chairman of the board of the Company.

15. Defendant Diane Gherson is a director of the Company.

16. Defendant Paul E. Martin is a director of the Company.

17. Defendant John McCormack is a director of the Company.

18. Defendant Yancey L. Spruill is a director of the Company.

19. Defendant Martin Taylor is a director of the Company.

20. Defendant Vikra Verma is a director of the Company.

21. The defendants identified in paragraphs 10 through 20 are collectively referred to herein as the "Individual Defendants."

## SUBSTANTIVE ALLEGATIONS

*Background of the Company and the Proposed Transaction*

22. Ping Identity makes digital experiences both secure and seamless for its users.

23. The Company allows enterprises to combine its best-in-class identity solutions with third-party services they already use to remove passwords, prevent fraud, and support Zero Trust. More than half of the Fortune 100 choose Ping Identity to protect digital interactions from their users.

24. On August 2, 2022, Ping Identity's Board caused the Company to enter into the Merger Agreement.

25. Pursuant to the terms of the Merger Agreement, Ping Identity shareholders will receive $28.50 in cash for each Ping Identity share they own.

26. According to the press release announcing the Proposed Transaction:

Ping Identity (NYSE: PING), provider of the Intelligent Identity solution for the enterprise, today announced that it has entered into a definitive agreement to be acquired by Thoma Bravo, a leading software investment firm, for $28.50 per share in an all-cash transaction valued at an Enterprise Value of approximately $2.8 billion. The offer represents a premium of approximately 63% over Ping Identity's closing share price on August 2, 2022, the last full trading day prior to the transaction announcement, and a premium of 52% over the volume weighted average price of Ping Identity stock for the 60 days ending August 2, 2022.

"This compelling transaction is a testament to Ping Identity's leading enterprise identity solutions, our talented team, and our outstanding customers and partners," said Andre Durand, Ping Identity's Chief Executive Officer. "Identity security and frictionless user experiences have become essential in the digital-first economy and Ping Identity is better positioned than ever to capitalize on the growing demand from modern enterprises for robust security solutions. We are pleased to partner with Thoma Bravo, which has a strong track record of investing in high-growth cloud software security businesses and supporting companies with initiatives to turbocharge innovation and open new markets."

"A tectonic shift is occurring in intelligent identity solutions for the enterprise," said Seth Boro, a Managing Partner at Thoma Bravo. "Ping Identity's unique capabilities and strong position in enterprise identity security make it a great platform to deliver customer outcomes, expand into new use cases and support digital transformations. We are highly impressed with the talented Ping Identity team and look forward to working collaboratively in the years to come."

"Ping Identity is a leader in intelligent identity solutions for the enterprise and is well-positioned to capitalize on the significant opportunities in the $50 billion Enterprise Identity security solutions area," said Chip Virnig, a Partner at Thoma Bravo. "Our shared commitment to growth and innovation, combined with Thoma Bravo's significant security software investing and operational expertise, will enable Ping Identity to accelerate its cloud transformation and delivery of industry leading identity security experiences for the customers, employees and partners of large enterprises worldwide."

Transaction Details

The transaction, which was unanimously approved by the Ping Identity Board of Directors, is expected to close in the fourth quarter of 2022, subject to customary closing conditions, including approval by Ping Identity shareholders and regulatory

approvals. Closing of the transaction is not subject to any financing contingency. Upon completion of the transaction, Ping Identity's common stock will no longer be listed on the New York Stock Exchange and Ping Identity will become a privately held company. The Company will remain headquartered in Denver, Colorado.

Vista Equity Partners, which owns approximately 9.7% of Ping Identity's outstanding shares, has agreed to vote its shares in favor of the transaction.

"This transaction is a great outcome, and one we firmly believe maximizes value for all stakeholders," said Michael Fosnaugh, Co-Head of Vista's Flagship Fund and Senior Managing Director, and Ping Identity's Chairman of the Board. "We wish Andre and the entire Ping Identity team continued success and thank them for their commitment and partnership over the last six years." . . .

Advisors

Goldman Sachs & Co. LLC is acting as exclusive financial advisor and Kirkland & Ellis LLP served as legal advisor to Ping Identity. Goodwin Procter LLP is serving as legal counsel to Thoma Bravo.

***The Proxy Statement Omits Material Information, Rendering It False and Misleading***

27. Defendants filed the Proxy Statement with the SEC in connection with the Proposed Transaction.

28. As set forth below, the Proxy Statement omits material information.

29. First, the Proxy Statement omits material information regarding the Company's financial projections.

30. The Proxy Statement fails to disclose: (i) all line items used to calculate the financial projections; and (ii) a reconciliation of all non-GAAP to GAAP metrics.

31. The disclosure of projected financial information is material because it provides stockholders with a basis to project the future financial performance of a company, and allows stockholders to better understand the financial analyses performed by the company's financial advisor in support of its fairness opinion.

32. Second, the Proxy Statement omits material information regarding the analyses performed by the Company's financial advisor, Goldman Sachs & Co. LLC ("Goldman Sachs").

33. With respect to Goldman Sachs' Illustrative Discounted Free Cash Flow Analysis, the Proxy Statement fails to disclose: (i) the terminal values used in the analysis; (ii) the individual inputs and assumptions underlying the discount rates and perpetuity growth rates used in the analysis; (iii) the net debt and NOLs used in the analysis; and (iv) the number of fully diluted shares outstanding used in the analysis.

34. With respect to Goldman Sachs' Illustrative Present Value of Future Share Price Analysis, the Proxy Statement fails to disclose: (i) the individual inputs and assumptions underlying the discount rate and multiples used in the analysis; (ii) the net debt used in the analysis; and (iii) the number of fully diluted shares outstanding used in the analysis.

35. With respect to Goldman Sachs' Selected Transactions Analysis, the Proxy Statement fails to disclose: (i) the individual metrics for the transactions; (ii) the closing dates of the transactions; and (iii) the total values of the transactions.

36. With respect to Goldman Sachs' Premia Analysis, the Proxy Statement fails to disclose: (i) the transactions observed in the analysis; and (ii) the premiums paid in the transactions.

37. With respect to Goldman Sachs' Selected Public Company Comparables analysis, the Proxy Statement fails to disclose the individual metrics for the companies.

38. When a banker's endorsement of the fairness of a transaction is touted to shareholders, the valuation methods used to arrive at that opinion as well as the key inputs and range of ultimate values generated by those analyses must also be fairly disclosed.

39. The omission of the above-referenced material information renders the Proxy Statement false and misleading.

40.     The above-referenced omitted information, if disclosed, would significantly alter the total mix of information available to the Company's stockholders.

## COUNT I

### Claim for Violation of Section 14(a) of the 1934 Act and Rule 14a-9 Promulgated Thereunder Against the Individual Defendants and Ping Identity

41.     Plaintiff repeats and realleges the preceding allegations as if fully set forth herein.

42.     The Individual Defendants disseminated the false and misleading Proxy Statement, which contained statements that, in violation of Section 14(a) of the 1934 Act and Rule 14a-9, in light of the circumstances under which they were made, omitted to state material facts necessary to make the statements therein not materially false or misleading.  Ping Identity is liable as the issuer of these statements.

43.     The Proxy Statement was prepared, reviewed, and/or disseminated by the Individual Defendants.  By virtue of their positions within the Company, the Individual Defendants were aware of this information and their duty to disclose this information in the Proxy Statement.

44.     The Individual Defendants were at least negligent in filing the Proxy Statement with these materially false and misleading statements.

45.     The omissions and false and misleading statements in the Proxy Statement are material in that a reasonable stockholder will consider them important in deciding how to vote on the Proposed Transaction.  In addition, a reasonable investor will view a full and accurate disclosure as significantly altering the total mix of information made available in the Proxy Statement and in other information reasonably available to stockholders.

46.     The Proxy Statement is an essential link in causing plaintiff to approve the Proposed Transaction.

47. By reason of the foregoing, defendants violated Section 14(a) of the 1934 Act and Rule 14a-9 promulgated thereunder.

48. Because of the false and misleading statements in the Proxy Statement, plaintiff is threatened with irreparable harm.

## COUNT II

### Claim for Violation of Section 20(a) of the 1934 Act
### Against the Individual Defendants

49. Plaintiff repeats and realleges the preceding allegations as if fully set forth herein.

50. The Individual Defendants acted as controlling persons of Ping Identity within the meaning of Section 20(a) of the 1934 Act as alleged herein. By virtue of their positions as officers and/or directors of Ping Identity and participation in and/or awareness of the Company's operations and/or intimate knowledge of the false statements contained in the Proxy Statement, they had the power to influence and control and did influence and control, directly or indirectly, the decision making of the Company, including the content and dissemination of the various statements that plaintiff contends are false and misleading.

51. Each of the Individual Defendants was provided with or had unlimited access to copies of the Proxy Statement alleged by plaintiff to be misleading prior to and/or shortly after these statements were issued and had the ability to prevent the issuance of the statements or cause them to be corrected.

52. In particular, each of the Individual Defendants had direct and supervisory involvement in the day-to-day operations of the Company, and, therefore, is presumed to have had the power to control and influence the particular transactions giving rise to the violations as alleged herein, and exercised the same. The Proxy Statement contains the unanimous recommendation of the Individual Defendants to approve the Proposed Transaction. They were thus directly involved

in the making of the Proxy Statement.

53. By virtue of the foregoing, the Individual Defendants violated Section 20(a) of the 1934 Act.

54. As set forth above, the Individual Defendants had the ability to exercise control over and did control a person or persons who have each violated Section 14(a) of the 1934 Act and Rule 14a-9, by their acts and omissions as alleged herein. By virtue of their positions as controlling persons, these defendants are liable pursuant to Section 20(a) of the 1934 Act. As a direct and proximate result of defendants' conduct, plaintiff is threatened with irreparable harm.

## PRAYER FOR RELIEF

**WHEREFORE**, plaintiff prays for judgment and relief as follows:

A. Preliminarily and permanently enjoining defendants and all persons acting in concert with them from proceeding with, consummating, or closing the Proposed Transaction;

B. In the event defendants consummate the Proposed Transaction, rescinding it and setting it aside or awarding rescissory damages;

C. Directing the Individual Defendants to disseminate a Proxy Statement that does not contain any untrue statements of material fact and that states all material facts required in it or necessary to make the statements contained therein not misleading;

D. Declaring that defendants violated Sections 14(a) and/or 20(a) of the 1934 Act, as well as Rule 14a-9 promulgated thereunder;

E. Awarding plaintiff the costs of this action, including reasonable allowance for plaintiff's attorneys' and experts' fees; and

F. Granting such other and further relief as this Court may deem just and proper.

## JURY DEMAND

Plaintiff hereby requests a trial by jury on all issues so triable.

Dated: September 21, 2022  **RIGRODSKY LAW, P.A.**

By: /s/ *Gina M. Serra*
Gina M. Serra
825 East Gate Boulevard, Suite 300
Garden City, NY 11530
Telephone: (516) 683-3516
Email: gms@rl-legal.com

*Attorneys for Plaintiff*